**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Dianne Boutwell, : | |
| : | Case No. 3:09cv1255 |
| Plaintiff : | |
| v. : | |
| Commissioner of Social Security, : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Appeal's Council's final determination denying her claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Pending are the parties' briefs (Docket Nos. 12 and 17). For the reasons set forth below, the Commissioner's decision is affirmed.

### I. JURISDICTION.

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## II. PROCEDURAL BACKGROUND.

Plaintiff filed an application for DIB on October 26, 2001, alleging disability since September 28, 2001 (Tr. 85-87). Plaintiff's application was denied initially and upon reconsideration (Tr. 61-64 and 66-68). On April 9, 2004, a hearing was held before Administrative Law Judge (ALJ) Barbara Beran. Plaintiff, represented by counsel, and Richard Oestreica, Vocational Expert (VE), appeared and testified (Tr. 214-247). The ALJ issued an unfavorable decision on November 4, 2004 (Tr. 46-58). On November 22, 2004, Plaintiff filed a request for review of the hearing and the Appeals Council issued an order of remand to the ALJ on September 27, 2005. ALJ Beran held a second hearing on August 10, 2006 (Tr. 248-288). The ALJ issued an unfavorable decision on May 25, 2007, and Plaintiff filed a timely complaint with this court.

## III. FACTUAL BACKGROUND.

### A.  THE FIRST HEARING HELD ON APRIL 9, 2004.

Plaintiff was 61 years of age and resided with her husband. She had completed high school and one year of college (Tr. 218). Plaintiff weighed 125 pounds, was 4'11 and right-handed. She did not smoke, drink alcohol or use illegal drugs (Tr. 219). Plaintiff had a valid driver's license and drove about two or three times weekly to visit family. Plaintiff had not worked full time since September 28, 2001 (Tr. 221).

For a number of years Plaintiff had worked as a secretary for St. Mark's Methodist Church. Her duties included monitoring, by computer, the activities of a 1,000 person congregation; however, she resigned her position due to right-hand and arm tremors (Tr. 222-223).

In 1999, Plaintiff was diagnosed with the onset of Parkinson's Disease. While taking medication, Plaintiff stated she stumbled "from time to time" and had even fallen a couple of times. She considered these symptoms as being part of her Parkinson's disease. She suffered from tremors that radiated from her right forefinger to her upper extremities. Medication improved the tremors but her poor emotional state could aggravate the tremors. No other health conditions affected Plaintiff's ability to work. and her medications were not accompanied by adverse side effects. Consistent with her treating physician's recommendation, Plaintiff exercised at least once each week (Tr. 225-230).

Plaintiff had difficulty sitting and could only do so for approximately one hour. She estimated she could stand about forty-five minutes before getting very tired. She could walk about twenty minutes before experiencing fatigue. She also had problems doing fine, steady work with her hands (Tr. 231-233).

On a typical day, Plaintiff arose between 5:30 and 6:30 a.m., ate breakfast, watched morning television, worked a jig saw puzzle, took a shower, got dressed, cleaned, prepared lunch, took a power nap around 2:00 p.m., read, visited her parents, and went to bed between 10 and 10:30 p.m. Plaintiff and her husband went out to eat frequently, socialized with church friends and attended church every Sunday. At church, Plaintiff sang in the choir and taught a class on Sundays and again midweek. She estimated she attended church functions four or five times weekly (Tr. 233-235).

Upon examination by counsel, Plaintiff stated that she did have some problems with overall balance. She might stumble over nothing and she might want to touch a wall while walking for balance. She reported her memory is not good at all, presumably from the Parkinson's Disease (Tr.

239). Plaintiff described herself as energized when she first awoke but that by midmorning or noon, she was tired and by afternoon she might nap (Tr. 240-241).

The VE classified Plaintiff's secretarial position as skilled and sedentary. The VE thought with limitations set forth in the residual functional capacity (RFC) plus the inability to have a steady hand, Plaintiff could still perform her past secretarial work. The VE also thought some additional sedentary work would be available for her (Tr. 243). Upon cross-examination, the VE said if Plaintiff had an inability to use a computer mouse efficiently, she could not perform a secretarial job (Tr. 244).

**B.     THE REMAND HEARING HELD ON AUGUST 10, 2006.**

Plaintiff, now weighing approximately 130 pounds, had celebrated her 63rd birthday (Tr. 252). On her 62nd birthday, Plaintiff began collecting Social Security (Tr. 255). She continued to live with her husband who, after retiring, went back to teaching full time (Tr. 252). She drove every day but not very far, and her greatest driving distance was to visit her parents about forty miles away (Tr. 253).

Plaintiff reiterated that she could not work at her former secretarial job at the church because of poor memory, an inability to respond quickly to inquiries, worsening right-hand tremors that resulted in poor penmanship and poor balance (Tr. 256-258). Medications, taken as prescribed, seemed to have no side affects upon Plaintiff and also seemed to be effective in treating her symptoms (Tr. 260).

In addition to her medical regime, Plaintiff had altered her lifestyle by eating a healthy diet and exercising (Tr. 261-262). Plaintiff thought she could sit "a couple" of hours, stand two to three

hours and walk about one-half to one mile. Since she could not lift her grandchild who weighed sixteen pounds, Plaintiff estimated that she could lift no more than ten pounds (Tr. 263-264).

Besides visiting her grandchild biweekly, Plaintiff continued to read and work jigsaw puzzles. She watched little television. She and her husband went out to eat two to three times weekly. She still visited her parents weekly and was very active in church (Tr. 266-269).

The VE stated Plaintiff's former position of church secretary was skilled at the sedentary level and that Plaintiff could perform her past work subject to the state agency's finding of RFC. The VE explained that if Plaintiff's testimony were totally credible and her claims were supported by substantial medical evidence, there would be no jobs available that she could perform (Tr. 282). The combination of the reduced memory, the use of the right upper dominant extremity and the tremors would preclude work (Tr. 282-283).

### III. MEDICAL EVIDENCE.

Plaintiff was referred for participation in a research project at the Madden Parkinson's Center of Excellence at the Ohio State University (Madden Center) in July 2001. In August 2001, Dr. George Paulson noted that the medication designed to treat Parkinson's Disease, had helped Plaintiff's tremors (Tr. 170).

Dr. Noel N. Eboh conducted a neurological evaluation on May 11, 2000, after which he determined that Plaintiff had very subtle increased reflexes in the presence of the tremors. However, he doubted that the essential tremors were early Parkinson's Disease (Tr. 140). In June 2000, Dr. Eboh determined that the tremor in Plaintiff's hand was intentional (Tr. 146). The tremor in Plaintiff's right hand worsened in July 2000 (Tr. 145). Over the following months, Dr. Eboh prescribed medication designed to treat seizures. Plaintiff did not tolerate medications well;

however, in December, 2000, Dr. Eboh prescribed medication for the treatment of hypertension (Tr. 143). On June 14, 2001, Dr. Eboh noted that Plaintiff continued to have the tremor, more pronounced on the right hand (Tr. 141).

In December 2001, Dr. Thomas C. Thornton confirmed the diagnosis of Parkinson's Disease (Tr. 151). It was his opinion that Plaintiff could not write legibly or use a small keyboard but she could engage in appropriate daily activities such as sitting, standing and walking (Tr. 150, 151).

Plaintiff was seen by Dr. Sandra Kostyk, a spinal injury and neurology specialist, on February 18, 2002. She adopted the diagnosis of early onset Parkinson's Disease (Tr. 154).

On February 20, 2002, Dr. Robert M. Hess, a neurological surgeon, confirmed that Plaintiff had Parkinson's Disease, the right side affected more than the left. Plaintiff had not incurred significant rigidity, lack of facial emotion or intellectual deterioration (Tr. 156).

Dr. Henry H. Chung, MD, determined on March 5, 2002, that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday and push and/or pull on an unlimited basis (Tr. 162). Plaintiff was limited to occasionally climbing using a ladder/rope/scaffold and limited in fingering (Tr. 163). Concentrated exposure to hazards was contraindicated (Tr. 165).

Dr. Alice L. Chambly, Psy.D., determined on March 11, 2002, that Plaintiff had no medically determinable mental impairment (Tr. 180). Plaintiff's intelligence quotient was within the average range, her scores on the Wechsler Memory Scale (WMS) were in the above average range and she presented no psychological diagnosis (Tr. 192).

At the Madden Center, it was determined that Plaintiff had a little more tremor on April 14, 2002 (Tr. 167).

On May 31, 2002, Dr. James F. Sunbury, Ph. D., interviewed Plaintiff as part of the determination of disability. The WMS and Wide Range Achievement Test (WRAT) were administered. Plaintiff's score on the WMS placed her memory functioning in the 77th percentile and her raw score on the WRAT placed her in a post-high school grade level. If symptoms were present that affected Plaintiff's social, occupational and psychological functioning, they were transient and predictable reactions to psychosocial stressors (ex: difficulty concentrating after a family argument); no more than slight impairment in social, occupational, or school functioning (Tr. 177).

Dr. Kostyk determined on August 10, 2004, that Plaintiff's Parkinson disease was fairly well controlled. Plaintiff was borderline hypertensive. Xanax was prescribed to treat symptoms of anxiety (Tr. 201). Dr. Kostyk determined on January 25, 2005, that Plaintiff's symptoms were fairly stable (Tr. 199).

On March 18, 2006, Plaintiff underwent an evaluation at the Madden Center. There, Dr. Karen M. Thomas, a doctor of osteopathic medicine with an interest in Parkinson's disease, confirmed the diagnosis of Parkinson's disease (Tr. 210).

On April 3, 2006, Dr. Khozema M. Rajkotwala, an internist, determined that despite some memory loss, Plaintiff was doing well (Tr. 204). Dr. Rajkotwala opined that Plaintiff could raise her shoulders, elbows, wrists, fingers, hips, knees, feet and great toe against maximal resistance (Tr. 205). Further, the degrees for the range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands/fingers, dorsolumbar spine, hips, knees and ankles were normal (Tr. 206-207).

### V. STANDARD FOR ESTABLISHING DISABILITY.

To be entitled to disability insurance benefits, an individual must be under a disability within the meaning of the Act. *Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 651

-652 (6th Cir. 2009) (*citing* 42 U.S.C. § 423(a)(1)(E)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U. S. C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Id.* (*citing* 20 C.F.R. § 404.1520(a)). The inquiry ends at that step if the claimant is found to be conclusively disabled or not disabled at any step. *Id.*

The five steps are as follows:

(1)   If the claimant is doing substantial gainful activity, the claimant is not disabled.

(2)   If the claimant does not have a severe medically determinable physical or mental impairment- i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.

(3)   If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

(4)   If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

(5)   If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Id.* (*citing* 20 C. F. R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g); *see also Cruse v. Commissioner of Social Security,* 502 F.3d 532, 539 (6th Cir.2007); *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529 (6th Cir. 1997)). The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner. *Id.*(*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)).

### V. ALJ DETERMINATIONS.

After consideration of the entire record, the ALJ made the following findings from the second hearing held on August 10, 2006:

1. Plaintiff met the disability insured status requirements of the Act on September 28, 2001, the date she stated she became unable to work, and continued to meet them through the date of this decision.

2. Plaintiff had not engaged in substantial gainful activity since September 28, 2001.

3. The medical evidence established that the Plaintiff had a "severe" impairment best described as early Parkinson's Disease, but that she did not have an impairment listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Plaintiff's testimony regarding her limitations was credible to the extent that she had a severe impairment. However, for the reasons stated in the body of this decision, the Plaintiff's testimony was not credible to show that she was incapable of all work activity at any exertional level.

5. Plaintiff had the RFC to lift and carry ten pounds frequently and twenty pounds occasionally, sit for six hours total with normal breaks and stand and/or walk for at least two hours total with normal breaks in an eight-hour workday. Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Plaintiff could occasionally climb ladders, ropes and scaffolding. Plaintiff was precluded from working around hazardous machinery, working at unprotected heights and performing tasks requiring a steady hand, such as with threading a needle or writing neatly. 20 C.F.R. § 404.1545.

6. Plaintiff's past relevant work as a secretary did not require the performance of work-related activities precluded by the above limitations. 20 C.F.R. § 404.1565.

7. Plaintiff's impairments did not prevent her from performing her past relevant work.

8. Plaintiff was not under a "disability" as defined in the Act at any time through the date of the decision. 20 C.F.R. § 404.1520(f).

(Tr. 26-27).

### VII. STANDARD OF REVIEW.

Judicial review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were

applied. *Elam ex rel. Golay v. Commissioner of Social Security,* 348 F.3d 124, 125 (6th Cir. 2003) (*See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)). The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision. *Id.* The terms "substantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ealy v. Commissioner of Social Security,* 594 F.3d 504, 512 (6th Cir. 2010) (*citing Lindsley v. Commissioner of Social Security,* 560 F.3d 601, 604 (6th Cir. 2009) (*quoting Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)).

### VIII. PLAINTIFF'S POSITION.

Plaintiff contends that the ALJ improperly rejected Dr. Thornton's opinion that she could not write legibly or use a keyboard efficiently. This opinion is supported by other medical opinions in the record.

In the alternative, the ALJ failed to address the factors that must be considered when discounting a treating physician opinion. This error requires remand.

Plaintiff's second claim is that substantial evidence proves that Plaintiff cannot return to her past relevant work as a secretary because of the limitations in manipulating her hand and/or fingers.

### IX. DEFENDANT'S POSITION.

Defendant's first contention is that the ALJ properly assessed and discounted Dr. Thornton's opinions.

Defendant also contends that substantial evidence supports the ALJ's decision that Plaintiff can return to her past relevant work as a secretary.

## X.  ISSUES PRESENTED.

(1)   Is there substantial evidence to support a finding that the ALJ improperly analyzed the opinion of Dr. Thornton that Plaintiff had difficulty manipulating?

(2)   Is there substantial evidence to support a finding that Plaintiff cannot return to her past relevant work?

### XI.  ANALYSIS OF THE TREATING PHYSICIAN RULE.

It is well settled that the opinions of treating physicians are given substantial, if not controlling, deference. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2) (2004)).  Treating physicians' opinions are only given such deference when supported by objective medical evidence.  *Id*. (*citing Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003)).  Opinions of treating physicians are given great weight even if those opinions are deemed not to be controlling.  *White v. Commissioner of Social Security,* 572 F.3d 272, 286 (6th Cir. 2009) (*citing* S.S.R. 96-2p).  ALJs must articulate "good reasons" for not giving the opinions of a treating physician controlling weight.  *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)).   But "the ultimate decision of disability rests with the administrative law judge." *Id.* (*citing Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992)).

Controlling weight applies when all of the following are present:

1.  The opinion must come from a "treating source," as defined in 20 C.F.R. § 404.1502.

2.  The opinion must be a "medical opinion."  Under 20 C.F.R. § 404.1527(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.").

11

>   3.   The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.
>
>   4.   Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, SSR 96-2p, 1996 WL 374188, *2 (1996).

Although Dr. Thornton has been Plaintiff's physician since the 1980s, his opinion is not entitled to controlling weight.  Dr. Thornton submitted responses to a physician's questionnaire form.  The opinions expressed in the answers to the questionnaire fail to discuss the nature and severity of Plaintiff's impairment.  Consequently, the opinions are not medical opinions as defined under 20 C.F.R. § 404.1527(a) (Tr. 148).  The report indicates that Dr. Thornton did not conduct any diagnostic tests that would identify Plaintiff's impairments or illuminate their nature or severity (Tr. 149).

Dr. Thornton's opinions about Plaintiff's inability to manipulate is consistent with Dr. Hess' finding that Plaintiff could not type as well as she could.  This conclusion, however, was based on Plaintiff's assertions.  Dr. Hess did not conduct an independent evaluation to ascertain the truth of the matter asserted (Tr. 156).  Likewise, Dr. Paulson commented that Plaintiff's handwriting became shaky because she instructed him that it had (Tr. 172).  Dr. Sunbury noted that Plaintiff had difficulty operating a mouse because she identified this as a reason for leaving her job at the church (Tr. 174). However, when she presented to Dr. Rajkotwala on April 3, 2006, her right-hand coordination was intact.  Her ability to grasp, manipulate and pinch was normal.

The Magistrate finds that the ALJ did not err in failing to attribute controlling weight to Dr. Thornton's opinions.  Moreover, the ALJ explained why he discounted Dr. Thornton's opinions.  First,

they were inconsistent with the totality of the objective medical evidence. Second, Dr. Thornton's opinions were not substantiated by other medical evidence. Third, Dr. Thornton offered opinions on matters outside of his area of expertise (Tr. 55, 56). In effect, the ALJ determined that Dr. Thornton's opinion about the inability to type or use a mouse, was speculation and/or a subjective limitation suggested by Plaintiff, not a medical judgment.

The ALJ fully satisfied agency procedural requirements by rejecting Dr. Thornton's opinions and proffering good reasons for doing so. Since the ALJ's findings and inferences are reasonably drawn from the record and supported by substantial evidence, the ALJ's decision to attribute less weight to Dr. Thornton's opinions must be affirmed.

## XII. ANALYSIS OF PLAINTIFF'S ABILITY TO RETURN TO HER PAST WORK.

The Social Security Administration's regulations define past relevant work as substantial gainful activity performed within the last fifteen years that lasted long enough for an individual to learn to do it and was substantial gainful activity. 20 C.F.R. § 404.1565 (Thomson Reuters 2010). Substantial gainful activity is work activity that involves doing significant physical or mental activities. 20 C. F. R. § 404.1572 (a) (Thomson Reuters 2010). Work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than where he or she worked before. 20 C. F. R. § 404.1572 (a) (Thomson Reuters 2010).

Plaintiff's argument relies upon the ALJ's adoption of her assertions that she cannot use her right hand and that her capacity to remember is reduced. If these skills are impaired, Plaintiff lacks the functional capacity to return to her past relevant work as a secretary. However, Plaintiff has failed to sustain the burden of demonstrating that these functional impairments prevent her from doing her past relevant work.

A review of the evidence shows that the neurological findings do not show the presence of uncontrolled essential tremors (Tr.154, 204). In fact, Plaintiff explained to Dr. Thomas on March 18, 2006, that she "actually no longer experiences much tremor since being treated with medication" (Tr. 209). The diagnostic evidence showed that Plaintiff performed better than 77 of those taking the WMS (Tr. 177). Her memory function was only minimally impaired (Tr. 204). The ALJ's findings and inferences reasonably drawn from this evidence would not support a finding that Plaintiff was unable to use her right hand or that her capacity to remember is reduced. Since this finding is supported by substantial evidence, the decision finding that she can return to past relevant work must be affirmed.

## XIII. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Dated: September 16, 2010